ST. PAUL, J.
 

 Plaintiff alleges that it is the owner of a mineral lease on the west half of a certain quarter section of land, and that defendant is owner of a similar lease on the adjoining southeast quarter of the same quarter section; that plaintiff has drilled a gas well on the southwest corner of its holding; that defendant has also drilled a gas well on the southwest corner of its (defendant’s) holding, near plaintiff’s line, but has drilled it so negligently that it blew out, forming a crater, and is allowing to escape and go to waste. 10,000,000 cubic feet of gas a day worth 2 cents per 1,000; thus gradually exhausting the common reservoir, and damaging plaintiff to the extent of
 
 one quarter
 
 of said waste, or $50 per day; say $36,500 for two years preceding the filing of the suit, for which plaintiff seeks judgment
 

 I.
 

 It will be observed that
 
 both
 
 wells are drilled near the south line of said quarter section, and therefore adjoining another section to the south of the holdings of both parties; also, that defendant owns
 
 one-half
 
 said quarter section.
 

 'And it nowhere appears just why plaintiff claims
 
 one-fourth
 
 of the wasted gas instead of one-half, or some other proportion; except upon the fanciful supposition that the area of the common reservoir is exactly four times the area of plaintiff’s holdings; and that
 
 therefore
 
 plaintiff is entitled to one-fourth of its contents.
 

 .II.
 

 The defendant filed an exception of no cause of action, which was overruled by the court below and renewed in this court. This ■ exception is well founded.
 

 Even if plaintiff were
 
 owner
 
 of that proportion of the gas in the common reservoir, which the area of its holding bears to the total area of such common reservoir, nevertheless it is not alleged (and much less could it be proved) what the area of that common reservoir may be, and what part of it lies beneath' plaintiff’s holdings. So that there would be no
 
 measure
 
 for any
 
 special
 
 damages which plaintiff might suffer. And as for
 
 general
 
 damages, plaintiff could recover none unless it showed that defendant had wasted (or drawn) out of the common reservoir more than its (defendant’s) just proportion of the gas in that
 
 common
 
 reservoir, which, or course, plaintiff could never show.
 

 III.
 

 But plaintiff is
 
 not
 
 the owner of the gas beneath its holdings; and ohe of the best evidences of that, if it were not already established authoritatively, is this very impossibility of showing damages as above said.
 

 But:
 

 “It is the .settled jurisprudence of this state that oil and gas in place are not subject to .absolute ownership as specific things apart from the soil of which they form part.’’ Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207.
 

 And again:
 

 “The owner [of the soil] has no absolute property in such oils, gases, and waters, but only, the right to draw them through the soil and thereby
 
 become the owner
 
 of them.” 150 La. 863, 91 So. 245.
 

 And in Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206, 5 A. L. R. 411, this court held, that:
 

 “An owner of land does not own the fugitive oil [and gas] beneath it, and cannot complain that it is being drawn off by a pump [or well] sunk by an adjoining land owner.”
 

 . Hence it follows that, were defendant merely
 
 drawing
 
 out of the common reservoir, and
 
 using legitimately
 
 the 10,000,000 feet of gas
 
 *731
 
 now going to waste, it is clear that plain•tiff would have no- cause whatever to complain. Hence, therefore, plaintiff would have no
 
 moneyed
 
 (or other) claim against defendant.
 

 IV.
 

 The question then arises, does the fact that the gas is'being
 
 wasted
 
 instead of being
 
 used,
 
 give plaintiff the right to a
 
 moneyed
 
 claim against defendant. We think not; the gas that is being wasted is no more plaintiff’s gas than it would be were it being
 
 used
 
 legitimately. He has therefore no claim for the value thereof.
 

 ■ V.
 

 We do not mean to say however that the owner of lands in an oil or gas field is without a remedy 'against the waste and waste-, ful methods of an adjoining owner. On the contrary, in Higgins Oil & Fuel Co. v. Guaranty Oil Co., supra, Mr. Justice Provosty has well pointed out that' he has a remedy, citing abundant authority therefor, all of which are after all but applications of the age-renowned maxim of the Roman law, “Sic utere tuo ut neminem laedas” viz. “Use thine own [right] so as not to injure thy neighbor [wantonly].” And for the enforcement of this moral maxim the law provides a remedy, viz. an action to abate a nuisance, public or private.
 

 Accordingly, the owner of lands in an oil or gas field may enjoin waste (or other injurious practices) on the part of others in the same field. Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206, 5 A. L. R. 411; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729. Moreover, the "state itself has now taken steps to prevent or minimize any such waste in the gas fields. Act 268 of 1918, p. 513; Act 270 of 1918, p. 516.
 

 But wé will pursue this subject no further, since defendant’s “wild” or runaway well has long since been brought under full control.
 

 . VI.
 

 In the court below, the defendant (after its exception had been overruled) answered by laying the blame on plaintiff, and reconvened for the cost of bringing their own well under control. The trial judge found the facts to be with defendant and gave judgment against plaintiff. In this court plaintiff has filed a plea of prescription of one year to that claim, which plea is well founded and disposes of that claim. Defendant also made a claim on the same lines as that made by plaintiff, and which therefore must suffer the same fate.
 

 VII.
 

 The appeal was taken by plaintiff, the defendant has answered praying that its exception of no cause of action be maintained. The proper disposition of this casé will be to reverse the judgment of the court below and maintain the exception of no cause of action. But we think the costs should be divided equally between both par; ties, since plaintiff, though partly successful on appeal, has yet lost its suit, but defendants have increased the costs and forced an appeal by advancing a claim in which
 
 they
 
 were not successful. See Act 229 of 1910, p. 388.
 

 ’ Decree.-
 

 The judgment appealed from is therefore reversed, and it is now ordered that the exception herein filed by defendant be maintained and the suit dismissed and the demand of both parties rejected. All costs to be equally divided between plaintiff and defendants.
 

 LAND, J., recused.